## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

**Court File Number: TBD**

Esteban Martinez Vazquez,

Plaintiff,

v.

TL EDINA LLC d.b.a. Taco Libre, ST PAUL HOSPITALITY SYSTEMS LLC d.b.a. Taco Libre, Mpls Hospitality Systems LLC d.b.a. Taco Libre, TL Enterprise 1 LLC d.b.a. Taco Libre, Adrian Ramirez, and Diana Martinez Herrera,

Defendants.

**JURY TRIAL DEMANDED**

---

## PLAINTIFF'S COMPLAINT

PLAINTIFF Esteban Martinez Vazquez ("Martinez Vazquez") bring this action against Defendants for damages and other relief relating to, *inter alia*, violations of federal and state law for labor trafficking including under the Trafficking Victims Protection Reauthorization Act 18 U.S.C. § 1581 et seq. ("TVPRA"), and Minn. Stat. § 609.281 et seq.; and also prohibited employment practices including under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), the Minnesota Fair Labor Standards Act, Minn. Stat. § 177.23 et seq. ("MFLSA"), and the Minnesota Payment of Wages Act, Minn. Stat. § 181.01 et seq. ("PWA"). As and for his cause of action against the above-named Defendants, Plaintiff states and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Martinez Vazquez is an individual currently residing and domiciled in Saint Paul, Minnesota, in Ramsey County.

2. Defendant TL Enterprise 1 LLC d.b.a. Taco Libre ("Taco Libre Saint Paul") is an active Minnesota Corporation with a principal place of business address at 1221 South Robert Street W, Saint Paul, Minnesota 55118 as listed with the Minnesota Secretary of State.

1

3.  Defendant Mpls Hospitality Systems LLC d.b.a. Taco Libre ("Taco Libre Oakdale") is an active Minnesota Corporation that maintains a principal place of business address at 8364 3rd Street North, Oakdale, Minnesota 55128, as listed with the Minnesota Secretary of State.

4.  Defendant TL EDINA LLC d.b.a. Taco Libre ("Taco Libre Edina") is an active Minnesota Corporation that maintains a principal place of business address at 5125 Edina Industrial Boulevard #800, Edina, Minnesota 55439, as listed with the Minnesota Secretary of State.

5.  Defendant ST PAUL HOSPITALITY SYSTEMS LLC d.b.a. Taco Libre ("Taco Libre Saint Paul 2") is an active Minnesota Corporation with a principal place of business address at 354 North Wabasha Street, Saint Paul, Minnesota, 55102, as listed with the Minnesota Secretary of State (each of the referenced Taco Libre entities referred to collectively as "Taco Libre Defendants" hereafter).

6.  Defendant Adrian Ramirez ("Defendant Ramirez") is an individual who, upon information and belief, resides at 2986 Frontier Drive, Woodbury, MN 55129, and is the owner, chief operating officer, and managing supervisor of the four Taco Libre business entities named.

7.  Defendant Diana Martinez Herrera ("Defendant Herrera") is an individual who, upon information and belief, resides at 3095 Wilderness Path, Woodbury, MN 55129. Defendant Herrera is employed by Defendant Ramirez and helped enforce the terms of the alleged trafficking contract between Plaintiff and Defendant Ramirez.

8.  Defendants' collective trade or business is the operation of restaurants, generally known by the trade name "Taco Libre," in the Twin Cities metropolitan area.

9.  The business entity Defendants, collectively and/or individually, are or have been an enterprise engaged in commerce or in the production of goods or services for commerce

within the meaning of 29 U.S.C. § 203 (s)(1) and, upon information and belief, have had annual gross volume of sale or business of not less than $500,000 at all relevant times.

10. At all relevant times, the business entity Defendants have collectively and individually constituted an employer of Plaintiff for purposes of state and federal wage and pay law.

11. Defendants have conspired and coordinated to engage in a willful pattern, policy, and practice of unlawful conduct, as alleged herein, in violation of Plaintiff's rights.

12. This Court has exclusive jurisdiction over Plaintiff's TVPRA claim pursuant to 18 U.S.C. § 1595. This Court has original subject matter jurisdiction over the other federal claims in this matter pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims, given that the state and federal claims arise from a common nucleus of operative fact.

13. This District is a proper venue for hearing this matter under 28 U.S.C. § 1391(b)(1) because all Defendants are residents here and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred here.

## FACTS

### Plaintiff Martinez Vazquez's Background and Travel to the United States

14. Plaintiff grew up in Tultitlan, State of Mexico, Mexico. Before coming to the United States, Plaintiff operated a small taco stand in his home town, Tultitlan. But, his business was robbed by local gangs multiple times, which made it nearly impossible to continue to operate.

15. On or around November 1, 2015, Plaintiff was contacted in Tultitlan by a man named Antonio, who is the cousin of Defendant Ramirez. Antonio traveled to Tultitlan and offered Plaintiff and Plaintiff's brother jobs working for Defendants in the United States.

16. On information and belief, Defendant Ramirez directed Antonio to travel from Minnesota to Tultitlan to recruit Plaintiff and Plaintiff's brother, named Jose Luis, to come to Minnesota and work in his restaurant. Defendant Ramirez has family connections that tie him to the same neighborhood in Tultitlan as Plaintiff, which is how he knew Plaintiff's identity.

17. Plaintiff accepted the offer because his taco stand business was falling into debt and he believed that he could earn enough money in the U.S. to pay off the debts he incurred running his business.

18. Plaintiff's brother, Jose Luis, traveled to the U.S. around nine months before Plaintiff because Plaintiff needed more time to prepare for the move.

19. After Antonio notified Defendant Ramirez of Plaintiff's acceptance, Defendant Ramirez sent him money through the mail to travel to the Texas-Mexico border.

20. Using the money sent by Defendant Ramirez, Plaintiff and a friend, Gildardo, traveled to the border via bus and taxi. The trip lasted around two days.

21. Once Plaintiff and Gildardo arrived at the Texas-Mexico border, Defendant Ramirez arranged for them to meet with a hired "coyote" (professional human trafficker/smuggler) who led them across the U.S.-Mexico border and into Texas.

22. Plaintiff and Gildardo entered the United States on or around June 14, 2016.

23. After Plaintiff and Gildardo were in Texas, the "coyote," acting on behalf of Defendant Ramirez, directed them to wait at a house in Texas until Defendant Ramirez came to pick them up and drive them to Minnesota; which he did on or around June 26, 2016.

24. During the migration, Defendant Ramirez paid for Plaintiff's food, housing, bus tickets, taxi fares, gas, and the "coyote" who helped Plaintiff and his brother cross the border.

25. Plaintiff assumed he would have to reimburse Defendant Ramirez for some of these costs, but Defendant Ramirez never told Plaintiff when, how, or for what he expected to be repaid.

**Plaintiff Martinez Vazquez's Contract with Defendant Ramirez**

26. Plaintiff, Gildardo, and Defendant Ramirez arrived in Minnesota around June 28, 2016.

27. Initially, Defendant Ramirez had Plaintiff and Gildardo stay in his home for approximately three months until they found other housing.

28. Plaintiff began to work for the Taco Libre Defendants immediately after arriving in Minnesota; Plaintiff began his employment with the Taco Libre Defendants at Taco Libre Saint Paul on July 1, 2016.

29. Around October 2016, Defendant Ramirez coerced Plaintiff to sign two contracts which Defendant Ramirez described as an "employment contract" and a repayment of relocation costs contract.

30. Defendant Ramirez presented the contract to Plaintiff in English even though he does not speak or understand English and Defendant Ramirez knew that Plaintiff did not understand English at this time.

31. Because of the language barrier, Plaintiff was not able to read and review the written contract.

32. When Plaintiff asked Defendant Ramirez what the "employment contract" was for, he replied that it was a contract to 1) Bind Plaintiff to work for him in his restaurants for five years, 2) Ensure that Plaintiff repays "the debt" owed to Defendant Ramirez for bringing him to the United States, and 3) Prevent Plaintiff from working at any other restaurant during his employment with the Taco Libre Defendants and for an additional two year period after his employment with the Taco Libre Defendants ends.

33. Plaintiff has no way to verify the exact amount Defendant claims is currently owed under "the debt", but Defendant Ramirez told Plaintiff his debt was around $12,950.00.

34. Plaintiff asked if he would get anything in return for the $12,950.00; Defendant Ramirez told Plaintiff that he got to have a job in the U.S. and that he would get "protection" but did not state or specify what Plaintiff would be protected from.

35. Even though Plaintiff has repeatedly requested a copy of this contract from Defendants Ramirez and Herrera, they have continuously refused to provide him with his own copy.

36. Plaintiff was concerned about signing his name to a document that he did not understand but signed the contract under duress because he had no other resources in the United States, and he felt that Defendant Ramirez had total control over his life and future in the United States.

37. Since signing the contract, Defendant Ramirez has made threats to Plaintiff about his safety and having him deported.

38. Because of Defendant's threats and manipulative employment practices, Plaintiff has made payments on "the debt" since that time.

39. Plaintiff has made payments totaling $12,950.00 to Defendant Ramirez. Defendant Ramirez has given Plaintiff receipts for most of these payments.

40. To date, Plaintiff Martinez Vazquez has no knowledge of the actual terms reflected in the "employment contract."

**Plaintiff Martinez Vazquez's Employment with Taco Libre Defendants**

41. Plaintiff has worked as a cook for the Taco Libre Defendants from July 2016 to June 16, 2019.

42. Plaintiff's responsibilities include preparing different foods for customers, managing the kitchen appliances, food preservation, and more.

43. From July 2016 through November 2016, Plaintiff worked an average of seventy-five hours per week at Taco Libre Saint Paul but was only compensated $200.00 every two weeks in cash.

44. When Plaintiff asked Defendant Ramirez about why he was being paid so little and in cash, Defendant Ramirez told him various excuses, including that it was a temporary "gratuity" conferred onto himself for bringing Plaintiff to the United States.

45. For the months of July 2016 through November 2016, Plaintiff received an average hourly wage of $1.33 per hour. This is substantially below the applicable minimum wage requirement in Minnesota for this period per Minn. Stat. § § 177.24, subdivisions 1(b)(2)(ii) and 1(b)(2)(iii) (2018).

46. Following the applicable Minnesota minimum wage requirements for July 2016 through November 2016, the Taco Libre Defendants owe Plaintiff an additional amount of approximately $9,475.00 for the hours he worked during this time.

47. Plaintiff transferred from Taco Libre Saint Paul to Taco Libre Oakdale in December 2016.

48. After being transferred to Taco Libre Oakdale, Plaintiff was still required to work shifts at Taco Libre Saint Paul when the restaurant's owner, Defendant Ramirez, deemed it necessary.

49. Plaintiff was also required to work at Taco Libre Edina at Defendant Ramirez's discretion.

**<u>Terms of Compensation</u>**

50. At least by December 2016, the Taco Libre Defendants agreed to compensate Plaintiff Martinez Vazquez in the amount of $11.00 per hour, before taxes or other deductions.[1]

51. Taco Libre Defendants agreed to increase Plaintiff's pay to $14.00 per hour in approximately January 2017.

---

[1] All stated wages shall be provided in gross amounts before taxes or deductions.

52. Taco Libre Defendants agreed to increase Plaintiff's pay to $15.50 per hour in approximately June 2017.

53. Taco Libre Defendants agreed to increase Plaintiff's pay to $16.50 per hour in approximately December 2017.

54. Taco Libre Defendants agreed to increase Plaintiff's pay to $18.00 per hour in approximately June 2018.

55. Since December 2016, Plaintiff's regular work hours have varied slightly, but he typically works at least six days per week from 9:00 am until approximately 8:30 pm depending on the flow of customers.

56. Sometimes, Plaintiff is required to work seven days a week depending on the schedule.

57. Plaintiff usually receives a fifteen-minute break for lunch unless the restaurant is short-staffed, or it is too busy in which case Plaintiff is forced to skip his lunch break.

58. On average, Plaintiff typically works at least seventy (70) hours per week for the Taco Libre Defendants.

59. The Taco Libre Defendants post weekly schedules for employees on Sunday at each of the restaurants.

60. Defendants' posted schedules reflected Plaintiff's start and end time but the Taco Libre Defendants rarely honored Plaintiff's scheduled end-time.

61. The Taco Libre Defendants maintain direct control over how many hours their employees work because employees were not allowed to leave their shift until Defendant Ramirez, or the on-site supervisor, told them they could clock out and leave, which was frequently after the end time stated on the schedule.

62. This practice routinely resulted in Plaintiff Martinez Vazquez working more than forty (40) or forty-eight (48) hours per week.

63. Plaintiff has asked Defendant Herrera about receiving overtime wages because she acted as a bookkeeper for the business, but she did not provide an explanation as to why he is never compensated at the overtime rate.

**Failure to Compensate Employees for Hours Worked**

64. Defendants agreed to pay employees, including Plaintiff, once every two weeks.

65. While working for Defendants, Plaintiff did not receive all the pay to which he was entitled, including for all of his overtime hours.

66. Instead, Plaintiff is typically compensated for eighty (80) hours per paycheck from Taco Libre Oakdale, and then he receives a supplemental paycheck for any hours worked over eighty (80) from one of the other Taco Libre Defendants.

67. To illustrate: on August 3, 2018, Plaintiff received one paycheck from Defendant Taco Libre Oakdale reflecting eighty (80) hours of work for the pay-period of July 16, 2018 through July 29, 2018 and received a second paycheck reflecting seventy and one-third hours (70.30) from Taco Libre Edina for the same pay-period, totaling one-hundred and fifty and a third (150.3) hours.

68. For the pay-period of July 16, 2018 through July 29, 2018, Plaintiff only worked at the Taco Libre Oakdale location, but was compensated at his regular pay rate for all one-hundred and fifty and one third (150.3) hours he worked for the Taco Libre Defendants;

69. Plaintiff is not compensated for appropriate overtime premium pay for hours worked in excess of forty (40) or forty-eight (48) each week.

70. Additionally, Plaintiff's paystubs show that the Taco Libre Defendants occasionally and inexplicably compensated him as a salaried employee for work at the Edina location even though the terms of his employment have always been to compensate him as an hourly worker.

71. Plaintiff has inquired about the hourly/salary discrepancy of his compensation, but the Taco Libre Defendants refuse to provide an adequate explanation.

72. The payroll documents issued by the Taco Libre Defendants make it appear that Plaintiff is entitled to or actually paid less in wages than he actually earned.

73. Under the Minnesota Fair Labor Standards Act, the amount of overtime pay earned by Plaintiff and converted, or yet unpaid, by Defendants totals in excess of $20,000.00.

74. Under the federal Fair Labor Standards Act, the amount of overtime pay earned by Plaintiff and converted, or yet unpaid, by Defendants totals in excess of $30,000.00.

75. Defendants conspired together to engage in the practices detailed above at all named Taco Libre locations.

76. The Taco Libre Defendants' manipulative payroll practices caused Plaintiff to suffer damages.

**Taco Libre Defendants' Violations**

77. Upon information and belief, Defendant Ramirez established each of the four restaurants with a common business purpose as demonstrated by the common ownership, common menu, common serving style, and uniform interior design of all four restaurants.

78. Upon information and belief, Defendant Ramirez exercises managerial authority over the Taco Libre Defendants, including control over their unified website.[2]

---

[2] *See*, http://www.tacolibreusa.com/

79. Upon information and belief, the Taco Libre Defendants do not operate separately and independently from one another, but as a single entity, as reflected by common policies, ownership, and employment practices.

80. The Taco Libre Defendants engaged in a pattern and practice of manipulating employees' recorded hours so as to eliminate the appearance of earned overtime wages on the applicable payroll records, including those wages for Plaintiff.

81. The nonpayment of overtime wages by Defendants is willful and not the result of mistake or inadvertence.

82. Defendants harmed Plaintiff directly and proximately through the above-described conduct.

83. For these reasons, the Taco Libre Defendants should each be jointly and severally liable for the violative conduct and claims stated below.

## COUNT ONE
## UNIFORM DECLARATORY JUDGMENTS ACT
### Minn. Stat. § 555.02 et seq.
*[Plaintiff against all Defendants]*

84. Plaintiff incorporates by reference each and every paragraph of Plaintiff's Complaint.

85. Defendant Ramirez compelled Plaintiff into an arrangement for forced labor or services after illegally trafficking Plaintiff into the United States.

86. In addition to his labor, Defendant Ramirez compelled Plaintiff to give him at least $12,950.00, including by and through payments to Defendant Martinez Herrera.

87. Defendant Ramirez continues to demand more payments from Plaintiff under the threat of death, substantial physical harm, or criminal/immigration legal consequences.

88. Obtaining labor or services through means of force and threat constitutes criminal conduct pursuant to Minnesota Statute Section 609.281, subdivision 4.

89. Obtaining labor or services through the trafficking of another constitutes criminal conduct pursuant to Minnesota Statute Section 609.281, subdivision 5.

90. A alleged contract for illegal conduct, such as human trafficking and forced labor or services, is void as contrary to public policy.

91. Such a contract is also voidable as unconscionable and agreed to under duress.

92. Plaintiff is entitled to an order of this Court declaring any alleged contract of employment or repayment between Plaintiff and any Defendant null and void as contrary to public policy and also ordering Defendant Ramirez to fully reimburse Plaintiff for any amounts paid.

## COUNT TWO
## TRAFFICKING VICTIMS PROTECTIONS REAUTHORIZATION ACT (TVPRA)
## 18 U.S.C. Section 1581 et seq.
### *[Plaintiff against all Defendants]*

93. Plaintiff Martinez Vazquez incorporates by reference each and every paragraph of Plaintiff's complaint.

94. The TVPRA creates a private right of action at 18 U.S.C. § 1595 for victims of violative conduct as defined in Title 18, Chapter 77 of the United States Code.

95. 18 U.S.C. § 1581 prohibits the holding or returning of any person to a condition of peonage.

96. 18 U.S.C. § 1589(a) prohibits knowingly providing or obtaining the labor or services of a person by means of any:

    (1) force, threats of force, physical restraint, or threats of physical restraint to that person or another person;

    (2) serious harm or threats of serious harm to that person or another person;

    (3) abuse or threatened abuse of law or legal process; or

    (4) scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

97. 18 U.S.C. §§ 1589(b) & 1593A generally prohibit knowingly benefitting from participation in a venture which engaged in any conduct enumerated in violation of Chapter 77, with knowledge or reckless disregard of the fact that such venture engaged in such conduct.

98. 18 U.S.C. §§ 1590 prohibits the knowing recruitment, harboring, transportation, provision, or obtaining by any means, of any person for labor or services, and also prohibits the obstruction, attempted obstruction, or interference with or prevention of enforcement thereof.

99. Pursuant to 18 U.S.C. § 1594, an attempt or conspiracy to violate any of sections 1581, 1589, or 1590 is punishable in the same manner as a completed violation.

100.    Defendants' conduct, as enumerated throughout Plaintiff's Complaint, violated one or more of the above-referenced provisions.

101.    Under the TVPRA, Plaintiff is entitled to bring an action against the perpetrator of his labor trafficking (and others who knowingly benefit from the same) for restitution and recovery of damages and reasonable attorney fees, in addition to any potential criminal liability and forfeiture that may be imposed. 18 U.S.C. §§ 1593 &1595(a).

## COUNT THREE
### MINNESOTA LABOR TRAFFICKING CRIMES
### Minnesota Statute Section 609.281 et seq.
*[Plaintiff against all Defendants]*

102.    Plaintiff Martinez Vazquez incorporates by reference each and every paragraph of Plaintiff's complaint.

103.    Defendant Ramirez committed acts constituting Blackmail, Debt Bondage, Forced Labor or Services, and Labor Trafficking, each as defined by Minnesota Statute Section 609.281 (2019).

104. Defendant Ramirez coerced Plaintiff, the labor trafficking victim, to perform forced labor or services in bondage to relieve him from an alleged debt to Defendant Ramirez and under threat of physical harm and/or abuse of legal process.

105.  Pursuant to Minnesota Statute Section 609.281 and as enumerated through the Complaint, all Defendants engaged in "the recruitment, transportation, transfer, harboring, enticement, provision, obtaining, or receipt of a person by any means," and "receiving profit or anything of value, knowing or having reason to know it is derived from an act" through debt bondage, forced labor or services, slavery, or practices similar to slavery.

106. Minnesota Statute Section 609.284, subdivision 2 provides for a private right of action for damages, including punitive damages, reasonable attorney fees, and other litigation costs reasonably incurred by the victim and in addition to any potential criminal liability.

### COUNT FOUR
### FEDERAL FAIR LABOR STANDARDS ACT (FLSA)
### 29 U.S.C. §§ 201 et seq.
*[Plaintiff against Taco Libre Defendants]*

107. Plaintiff incorporates by reference each and every paragraph of Plaintiff's Complaint.

108. Defendants are employers as defined in 29 U.S.C. §203 (d), including for overtime pay.

109. Plaintiff is an employee of Defendants as defined under 29 U.S.C. §203 (e), including for overtime pay.

110. Plaintiff is entitled to overtime wages at 1.5 times the regular wage for all hours worked in excess of 40 hours in a week under 29 U.S.C. §207 (a).

111. At the applicable rates of pay, Defendants should have paid Plaintiff at least an additional $30,000.00 for overtime wages.

112. Defendants knowingly and in bad faith failed to pay wages due to Plaintiff.

113. Because of Defendants' actions, Plaintiff suffered damages.

14

114.  Plaintiff is entitled to bring suit and recover an award of damages for those unpaid overtime wages plus an additional equal amount in liquidated damages and any other compensatory damages. 29 U.S.C. §216 (b).

115.  Plaintiff is entitled to costs, disbursements, and witness and attorney fees.  Id.

116.  Plaintiff has a private right of action under the FLSA.

**COUNT FIVE**
**MINNESOTA FAIR LABOR STANDARDS ACT (MFLSA)**
**Minn. Stat. §§ 177.21 et seq. (2019)**
*[Plaintiff against Taco Libre Defendants]*

117.  Plaintiff incorporates by reference each and every paragraph of Plaintiff's Complaint.

118.  Defendants are employers within the meaning of Minn. Stat. § 177.23, subd. 6 (2019).

119.  Defendants are a small or large employer as defined in Minn. Stat. § 177.24, subd. 1(a).

120.  Plaintiff is an employee of Defendants as defined under Minn. Stat. § 177.23, subd. 7.

121.  Plaintiff is an employee for overtime calculated under Minn. Stat. § 177.25.

122.  Plaintiff is entitled to overtime wages at 1.5 times his regular wages for all hours worked in excess of 48 hours in a week under Minn. Stat. § 177.25.

123.  At the applicable rates of pay, Defendants should have paid Plaintiff at least an additional $20,000.00 for overtime wages.

124.  Defendants knowingly and in bad faith failed to pay wages due to Plaintiff.

125.  Because of Defendants' actions, Plaintiff suffered damages.

126.  Plaintiff is entitled to bring suit and recover an award of damages for those unpaid overtime wages plus an additional equal amount in liquidated damages and any other compensatory damages. Minn. Stat. § 177.27, subd. 5-8 (2019).

127.  Plaintiff is entitled to costs, disbursements, and witness and attorney fees.  Id. at subd. 10.

128.  Plaintiff has a private right of action under the MFLSA to recover unpaid overtime wages.

129. Plaintiff is also an employee of Defendants for purposes of minimum wage requirements as mandated by Minn. Stat. § 177.24, subd. 1(b) (2019).

130. For the month of July 2016, Plaintiff was entitled to a minimum pay rate of $7.25 per hour worked in accordance with Minn. Stat. § 177.24, subd. 1(b)(2)(ii) (2019).

131. For the months of August 2016, September 2016, October 2016, and November 2016, Plaintiff was entitled to a minimum pay rate of $7.75 per hour worked in accordance with Minn. Stat. § 177.24, subd. 1(b)(2)(iii) (2019).

132. At the applicable mandatory minimum pay rates, Defendant should have paid Plaintiff an additional $9,475.00 for the months of July 2016 through November 2016.

133. Defendants knowingly and in bad faith failed to compensate Plaintiff at the mandatory minimum wage.

134. Because of Defendant's actions, Plaintiff suffered damages.

135. Plaintiff is entitled to bring suit and recover an award of damages for those unpaid wages plus an additional equal amount in liquidated damages and any other compensatory damages. Minn. Stat. § 177.27, subd. 5-8 (2019).

136. Plaintiff is entitled to costs, disbursements, and witness and attorney fees. Id. at subd. 10.

137. Plaintiff has a private right of action under the MFLSA to recover unpaid wages.

**COUNT SIX**
**MINNESOTA PAYMENT OF WAGES ACT (PWA)**
**Minn. Stat. § 181.01 et seq. (2019)**
*[Plaintiff against Taco Libre Defendants]*

138. Plaintiff incorporates by reference each and every paragraph of Plaintiff's Complaint.

139. Defendant Ramirez and the Taco Libre Defendants are all employers as defined in Minn. Stat § 181.171, subd. 4.

140. Plaintiff is an employee of Defendants for purposes of the PWA.

141. Defendant Ramirez coerced Plaintiff into signing an employment contract.

142. The terms of the employment contract included Plaintiff reimbursing Defendant Ramirez with Plaintiff's actual wages earned in order to secure continued employment with Defendants. This practice is prohibited by Minn. Stat. § 181.03, subd, 1 (2) (2019).

143. Plaintiff made repayment of wages to Defendant Ramirez in the amount of $12,950.00.

144. Plaintiff is entitled to sue and recover damages equal to twice the amount of disputed wages, which amount shall be determined at trial. M.S.A. § 181.03, subd. 3 (2019).

145. Defendant knew, or reasonably should have known that Plaintiff's employment with the Taco Libre Defendants was his sole source of income.

146. Defendants pay record manipulations and pay practices also included Defendants failure to report, or misreporting, Plaintiff's proper income and withholding for various tax and regulatory purposes.

147. Throughout the entirety of Plaintiff's employment, Defendant Ramirez continuously accepted payment from Plaintiff as consideration for securing his continued employment.

148. Employers may not, "demand or accept from any employee any part of such employee's wages or other consideration, or any gratuity, in consideration of giving to or securing [. . .] employment with such employer."  M.S.A. § 181.031 (2019).

149. Plaintiff has a private right of action under the PWA.

### COUNT SEVEN
### CIVIL CONSPIRACY

150. Plaintiff incorporates by reference each and every paragraph of Plaintiff's Complaint.

151. Upon information and belief, Defendant Ramirez is the owner of all Taco Libre locations.

152. Defendants Ramirez and Herrera maintain managerial and executive roles for the oversight or policy decisions of the Taco Libre Defendants.

17

153. Each Taco Libre Defendant maintained the same or similar policies that resulted in failure to adequately pay Plaintiff for all overtime hours worked, and which manipulated Plaintiff's pay records.

154. As detailed in the Complaint, Defendants' conduct was unlawful, knowing, and willful.

155. Defendants Ramirez, Herrera, and the Taco Libre Defendants worked together to accomplish the unlawful purpose of denying employees, including Plaintiff, their earned overtime wages and manipulating their pay records.

156. Plaintiff was harmed by the Defendants' conspiracy.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

1. Awarding Plaintiff damages for unpaid wages, refunded wages, or reimbursement of payments under void contracts, along with all applicable statutory or legal penalties and other enhancements in an amount to be determined at trial, but in excess of $105,000.00;

2. Granting judgment with all applicable interest, costs, fees, and disbursements herein, and awarding all monetary, statutory, and other awards to which Plaintiff is entitled;

3. Awarding Plaintiff punitive damages and attorney fees to the extent allowed by applicable federal or state law;

4. Granting other legal, injunctive, or equitable relief as the Court deems just and fair.

Plaintiff specifically reserves the right to amend the Complaint upon additional discovery.

SPACE LEFT INTENTIONALLY BLANK — SIGNATURE PAGE TO FOLLOW

**SIGNATURE**


_ s/ Esteban Martinez Vazquez _                          07/29/2019_____
Esteban Martinez Vazquez                              Date



**ATTORNEY FOR PLAINTIFF**


s/ Michael D. Gavigan                                07/29/2019_____
Michael D. Gavigan                                   Date
Minnesota Attorney Lic. No. 0393053
Wilson Law Group
3019 Minnehaha Avenue
Minneapolis, Minnesota 55406
Phone: 612.436.7100
Fax: 612.436.7101
Email: mgavigan@wilsonlg.com